**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Tongate Jackson,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-05687-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Patricia Jackson's ("Jackson") Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Jackson filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Jackson's Opening Brief (Doc. 19, Pl. Br.), Defendant Social Security Administration Commissioner's (the "Commissioner") Answering Brief (Doc. 22, Def. Br.), and Jackson's Reply Brief (Doc. 23, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's ("ALJ") decision and remands for a new disability determination.

**I.    BACKGROUND**

Jackson applied for disability insurance benefits on September 26, 2016, for a period of disability beginning on November 13, 2015. (R. at 212–13.) The Commissioner denied Jackson's application initially and on reconsideration. (*Id.* at 63–79.) On June 11, 2019, Jackson and a vocational expert testified at an administrative hearing before an ALJ. (*Id.*

at 42–62.) In a decision dated June 28, 2019, the ALJ found that Jackson was not disabled. (*Id.* at 21–36.) The Appeals Council subsequently denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–5.) Jackson now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Jackson. Upon considering the medical records and opinions, the ALJ evaluated Jackson's disability based on the severe impairment of osteoarthritis. (R. at 27.) The ALJ considered her "status post bilateral inguinal hernia repair with mesh placement, status post left patellar fracture and open reduction internal fixation [] and subsequent hardware removal, and hemochromatosis," but found those "impairments have not more than minimally limited [Jackson's] ability to perform basic work activities." (*Id.*) The ALJ evaluated Jackson's allegation of fibromyalgia but found that it was not a medically determinable impairment because it "co-occurs with other conditions that have not been excluded, for example, osteoarthritis and hemochromatosis." (*Id.* at 28.) The ALJ further considered Jackson's alleged "major depressive disorder and short-term memory deficits" but found that the evidence does not support a mental medically determinable impairment. (*Id.* at 29.) The ALJ reviewed the record, including medical records and statements from Jackson, the vocational expert, her treating physician, a physical consultative examiner, a psychological consultative examiner, and two State agency physicians. (*Id.* at 27–35.)

The ALJ found that Jackson does not have an impairment that meets or medically equals the severity of one of the listed impairments set out at 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at 30.) The ALJ then concluded that Jackson had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (*Id.*) Based on Jackson's RFC, the ALJ determined that she was able to perform past relevant work as an office manager. (*Id.* at 35.) Accordingly, the ALJ found that Jackson was not disabled during the relevant period. (*Id.* at 36.)

II.     **LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only

those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines

whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III. DISCUSSION

Jackson raises three arguments. First, Jackson argues the ALJ erred in determining her medically determinable impairments and, consequently, erred in subsequent steps of the disability determination. (Pl. Br. at 2, 6.) Second, Jackson contends the ALJ erred in weighing her subjective testimony. (*Id*. at 7.) Third, Jackson argues the ALJ erred in weighing medical opinion evidence. (*Id*. at 18.) For the following reasons, the Court reverses and remands for further proceedings.

The ALJ found Jackson to suffer from only one severe impairment, osteoarthritis. (R. at 27.) The ALJ concluded Jackson's "fibromyalgia is not a medically determinable impairment" because it "co-occurs with other conditions that have not been excluded, for example, osteoarthritis and hemochromatosis." (*Id.* at 28–29.) Jackson argues that "[n]o medical or legal authority states that fibromyalgia cannot be considered when individuals have co-morbid conditions such as osteoarthritis and hemochromatosis." (*Id.*) She further argues that osteoarthritis and hemochromatosis would not cause her non-joint pain, 18 of 18 positive tender points, headaches, and depression. (*Id.* at 5.)

The step-two inquiry is a threshold determination of whether a claimant has raised a prima facie case of disability. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening devise to dispose of groundless claims."). At step two, the ALJ considers whether a claimant has a severe medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The "ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.

Because Jackson's arguments rest on the signs and symptoms of fibromyalgia, it is helpful to understand what fibromyalgia is, what symptoms result, and how it is diagnosed. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id.* at 590. Fibromyalgia is unusual because those suffering from the disease have "muscle strength, sensory functions, and reflexes that are normal," their "joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal quotations omitted). Fibromyalgia is diagnosed based entirely on patients' reports of pain and other symptoms, and "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590; *see Revels*, 874 F.3d at 657 ("[The] diagnosis of fibromyalgia does not rely on X-rays or MRIs.").

Although the Ninth Circuit was once "reluctant to recognize fibromyalgia as an impairment that could render one disabled for Social Security purposes," a "sea-change occurred in 2012, when the [Social Security Administration] issued a ruling recognizing fibromyalgia as a valid basis for a finding of disability." *Revels*, 874 F.3d at 656 (internal quotations omitted). Social Security Ruling ("SSR") 12-2P established guidelines for evaluating fibromyalgia in disability claims.[1] *See* 2012 WL 3104869 (July 25, 2012). The ruling designates two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology ("ACR") Criteria for Classification of Fibromyalgia (the "1990 ACR Criteria") and the 2010 ACR Preliminary Diagnostic Criteria (the "2010 ACR Criteria"). *Id.* at *2. Pursuant to the first set of criteria, which is predicated on the 1990 ACR Criteria, a person suffers from fibromyalgia if: (1) she has a history of

---

[1] According to governing regulations, SSRs "'are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy and interpretations' of the [Social Security Administration]." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (quoting 20 C.F.R. § 402.35(b)(1)). Although "SSRs do not carry the 'force of law,'" if they are consistent with the Social Security Act and regulations, SSRs are entitled to "some deference." *Id.*

widespread pain that has persisted for at least three months; (2) she has tenderness in at least 11 of 18 specified points on her body; and (3) there is evidence that other disorders are not causing the pain. *Id.* at *2–3. Alternatively, under the second set of criteria, based on the 2010 ACR Criteria, a claimant suffers from fibromyalgia if: (1) she has a history of widespread pain that has lasted at least three months; (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not causing the pain. *Id.* at *3.

Here, the ALJ found that Jackson's "diagnosis of fibromyalgia does not meet the 1990 ACR [C]riteria or the 2010 ACR [C]riteria because the record shows that [her] fibromyalgia co-occurs with other conditions that have not been excluded, for example, osteoarthritis and hemochromatosis." (R. at 28.) As support, the ALJ cites to one page of Plaintiff's medical records, which lists "[o]steoarthritis involving multiple joints on both sides of body" as one of Jackson's medical conditions. (*Id.* at 29 (citing R. at 332).)

The Court agrees with Jackson that the ALJ erred when considering her fibromyalgia at step two of the disability determination. The ALJ made no effort to discuss with any specificity how Jackson's osteoarthritis or hemochromatosis preclude the finding that her fibromyalgia is a medically determinable impairment. During the administrative hearing, the ALJ noted:

> [F]ibromyalgia under the American Rheumatology Association rules is a diagnosis of exclusion. In other words, if we can't pin it on anything else and the patient meets these pressure points, then we have a diagnosis of fibromyalgia. But if there's anything else such as arthritis—anything, it could be physical or mental, it's not a proper diagnosis.

(R. at 52.) This blanket interpretation conflicts with Ninth Circuit law and SSR 12-2P. For example, in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), "the ALJ found that [a claimant] had three severe medical impairments: arthritis, obesity, and fibromyalgia." 874

- 6 -

F.3d at 653; *see also Stenberg v. Comm'r of Soc. Sec. Admin.*, 2017 WL 6026671, *2 (D. Or. Dec. 4, 2017) (concluding a claimant had severe impairments of "osteoarthritis, obesity, fibromyalgia, depression, and post-traumatic stress disorder"); *Middleton v. Astrue*, 2013 WL 1414882, *3 (D. Or. Apr. 8, 2013) (finding a claimant had multiple medically determinable impairments including osteoarthritis and fibromyalgia); *Kipps v. Comm'r of Soc. Sec. Admin.*, 2012 WL 6649589, *4 (D. Or. Dec. 20, 2012) (remanding for further proceedings because, even though there seemed to have been some overlap between a claimant's fibromyalgia and osteoarthritis, the court could not "determine from the record whether the pain associated with [the claimant's] generalized osteoarthritis was the same as the pain associated with her fibromyalgia, even when located in the same parts of the body").[2] Thus, contrary to the ALJ's assertion, arthritis and fibromyalgia have been found to co-occur as severe medically determinable impairments.

Moreover, as explained in SSR 12-2P, other disorders, like "rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders," may have signs or symptoms that are similar to those resulting from fibromyalgia. 2012 WL 3104869 at *3 n.7. Thus, the ruling requires "evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.* at *3. Those laboratory tests include "imaging[,] . . . complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." *Id.* As Jackson points out, her medical records reveal that she tested negative for anti-nuclear antibodies, cyclic citrullinated peptide antibodies, and rheumatoid factor,[3] and her white blood cell and

---

[2] These specific conditions have also been found to co-exist as severe medically determinable impairments in cases outside the Ninth Circuit. *See e.g.*, *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 232–33 (E.D.N.Y. Aug. 28, 2014).

[3] The record further indicates that the following laboratory tests occurred in November 2017: (1) Sedimentation Rate; (2) HLA-B27 Antigen; (3) Rheumatoid Factor; (4) Antinuclear Antibodies Screen, IFA, Reflex Titer/Pattern/Lupus/System Lupus Erythematous; (5) C-Reactive Protein; and (6) Lupus Anticoagulant Evaluation with Reflex. (R. at 334.) If, even considering this laboratory testing, the ALJ had doubts as to whether Jackson's fibromyalgia could be considered a medically determinable impairment, SSR 12-2P provides the ALJ can request additional information to resolve the insufficiency. 2012 WL 3104869 at *4.

platelet counts were normal. (R. at 716.) The evidence further indicates that imaging, including X-rays and MRIs, revealed only "mild" findings. (R. at 31–32, 283–98, 346–47, 557.) Accordingly, there is evidence in the record that other disorders which could cause her fibromyalgia symptoms had been excluded.

Jackson has a "longstanding history of progressively worsening generalized chronic widespread pain." (R. at 299.) In October 2017, her primary care specialist referred her to a pain management consultant for further evaluation and management of her chronic pain. (R. at 339.) Jackson described her pain as "aching, burning, constant, sharp, dull, moderate to severe in intensity, at times unbearable and associated with numbness and tingling." (*Id.*) Jackson further described her pain as "8/10 at its worst, 5/10 at its least, 7/10 on average." (*Id.*) In October 2016, Jackson's had tenderness at 18 of 18 tender points. (*Id.* at 684.) And, during a physical examination conducted in September 2018, Jackson continued to have tenderness at all 18 tender points. (R. at 303.)

The existence of severe impairments serves only as a threshold to be met for the purpose of screening out groundless claims. *See Smolen*, 80 F.3d at 1290. The evidence of Jackson's fibromyalgia exceeds this de minimis threshold. *See Perry v. Berryhill*, 2018 WL 4057255, *5 (C.D. Cal. Aug. 24, 2018) (remanding a matter for further proceedings because "[t]he evidence in the record was sufficient for the ALJ to conclude that [a claimant's] fibromyalgia is a severe impairment at step two under the de minimis test"). The Court therefore concludes that the ALJ committed legal error at step two of the disability determination. Jackson's fibromyalgia should have been included in the disability determination process as a severe medically determinable impairment.

The Court must now address the effect of this legal error. "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner contends that, "[b]ecause the ALJ considered all of [Jackson's] pain symptoms, any error in the ALJ's consideration of [her] fibromyalgia was harmless." (Def. Br. at 14.) The Court disagrees.

As the Ninth Circuit explained in *Revels*, "in evaluating whether a claimant's [RFC]

renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke*. The failure to do so is error . . . ." 874 F.3d at 662.

Here, the ALJ made no effort to determine which of Jackson's symptoms exist because of her fibromyalgia. The Court is mindful that there is likely overlap in at least some of Jackson's osteoarthritis symptoms and fibromyalgia symptoms. And the Ninth Circuit has recently explained that where, as may be the case here, "some of a [claimant's] symptoms are not caused by fibromyalgia, . . . the ALJ should determine which symptoms are attributable to fibromyalgia and which are not." *Sayers v. Saul*, 797 F. App'x 384, 385 (9th Cir. 2020) (unpublished). If the claimant's symptoms are caused by fibromyalgia, "the ALJ must assess the [claimant's] self-reporting of those symptoms in light of the fibromyalgia diagnosis." *Id.* (citing *Revels*, 874 F.3d at 662, and *Benecke*, 379 F.3d at 594). "But to the extent the [claimant's] symptoms are not caused by fibromyalgia, the ALJ can discount the [claimant's] self-reports under the typical two-step analysis . . . because any potential impact to the [claimant's] RFC due to those symptoms would not be 'because of fibromyalgia.'" *Id.* (internal citations omitted). Because the ALJ did not engage in this evaluation, the ALJ's error permeates through the disability determination. Accordingly, the Court finds the error is not harmless.

The ALJ further found that the "evidence does not support a mental medically determinable impairment" because Jackson's "medical records document routinely normal mental status," she has had "no formal mental health treatment since the alleged onset date," and her primary care provider "stated she was asymptomatic from 'recurrent major depressive episodes, mild' and symptoms were stable." (R. at 29.) As support, the ALJ relies on inpatient hospital records from February 2017, progress notes from November 2017, treatment records from December 2017, treatment records from April 2018, and records from a psychological examination in August 2018. (R. at 292–97, 332, 411, 738, 862, 868.)

Jackson's argument as to the ALJ's step-two determination appears to pertain only

to her fibromyalgia diagnosis. (*See* Pl. Br. 2–6; Reply at 2–3.) The Commissioner nonetheless maintains that "substantial record evidence supports the ALJ's decision" that Jackson's reported depression and short-term memory loss were not medically determinable, severe impairments. (Def. Br. at 14.) To the extent Jackson intends to challenge the ALJ's step-two determination with respect to her depression and affective disorder, the Court agrees with the Commissioner.

A medically determinable mental impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. A claimant's "statement of symptoms, a diagnosis, or a medical opinion" are not enough to establish an impairment. *Id.* The medical records cited by the ALJ reveal that Jackson has been diagnosed with major depressive disorder, but her medical providers consistently described her as "asymptomatic," noted that her "symptoms are stable" and "mild," and described her mood as "normal." (R. at 332, 411, 862, 868.) Records from a psychological examination in August 2018 quote Jackson explaining that "the depression for me is correlated with the pain." (R. at 292–94.) The examining physician further remarked that Jackson's "psychiatric symptoms appear to be secondary" to her physical impairments. (*Id.*) In addition, the records describe Jackson's mood as "mostly euthymic," her attention and concentration abilities are described as "good," and her "short-term memory appeared fair and her long-term memory appeared good." (R. at 292–94.) Considering this evidence, the Court finds the ALJ's assessment of Jackson's mental impairments meets the substantial evidence standard of review. Thus, the Court will not remand on this basis.

In sum, the ALJ committed legal error by failing to consider Jackson's fibromyalgia a severe medically determinable impairment. The Court finds that there remains doubt as to whether Jackson is disabled such that additional investigation and explanation by the agency is necessary. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Thus, the Court will remand this case for further administrative proceedings and further record development. On remand, the ALJ must distinguish between Jackson's fibromyalgia-related symptoms and the other symptoms in the medical

record unrelated to this diagnosis, apply the proper legal standard, and evaluate the remaining steps of the disability determination de novo.

Jackson's remaining arguments relate to subsequent steps of the disability determination. Because the ALJ's decision will be impacted by the eventual evaluation of Jackson's fibromyalgia and any limitations therefrom, the Court need not reach the remaining allegations.[4]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the final decision of the Social Security Commissioner is vacated, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 17th day of November, 2020.

Michael T. Liburdi
United States District Judge

---

[4] Jackson briefly raised concerns regarding the ALJ's denial of her request to subpoena consultative examiner R. Gordon, D.O. (Pl. Br. at 11; Reply at 23 n.6.) The ALJ denied the request because it failed "to state sufficiently the important facts that the request was expected to prove," failed to "indicate sufficiently why the facts could not be proven without issuing a subpoena," and it was "not reasonably necessary for the full presentation of the case." (R. at 24.) The ALJ further explained that "the record provides a sufficient basis to find that additional development is not necessary and that the evidence requested is not reasonably necessary for the full presentation of the case." (*Id.*) Because the ALJ must reevaluate Jackson's RFC de novo, the circumstances relevant to the request for subpoena may change. Thus, the Court will not address whether the ALJ's denial of Jackson's request was appropriate.